UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                            :

MELVIN BAEZ,                                           :

                Plaintiff,                    :

                                                   :

              - against -                 :    **MEMORANDUM DECISION**
                                                   :    **AND ORDER**

THE CITY OF NEW YORK; THOMAS    :
CAPRIOLA, C.O.; WILFREDO RAMOS,  :    17-cv-1767 (BMC)(PK)
C.O.; JAMES ARAUJO, C.O.; CAPTAIN  :
JANE DOE; RIKERS ISLAND O.B.C.C.  :
MEDICAL PERSONNEL,                            :

                                                   :

                     Defendants.             :
------------------------------------------------------------ X

**COGAN,** District Judge.

       Plaintiff *pro se*, who is currently incarcerated, brings this action under 42 U.S.C. § 1983 against the City of New York, three court officers at the Queens County Supreme Court, and unidentified Rikers Island medical personnel. This case was stayed pending the outcome of plaintiff's state court criminal case, People v. Baez, No. 430-17 (Queens Cty. Sup. Ct.), because the criminal case arises out of the same events as the instant case. By letter dated February 8, 2019, plaintiff informed the Court that he pled guilty to attempted assault in his criminal case.

       Because plaintiff's state case is no longer pending, the stay is lifted. For the reasons below, plaintiff's complaint is dismissed with respect to his false arrest and municipal liability claims but may proceed as to his excessive force and Eighth Amendment claims against the individual defendants.

## BACKGROUND

       The Court takes judicial notice of the fact that plaintiff previously pled guilty to being a felon in possession of a firearm, for which this Court sentenced him to 51 months' imprisonment

and three years' supervised release.  See United States v. Baez, No. 09-cr-74 (E.D.N.Y.), ECF No. 100.  During the period of his supervised release, the Probation Department charged him with several violations.  One of those charges derived from the fact that he was arrested by the New York City Police for criminal possession of narcotics in the fourth degree, a class C felony.  Plaintiff was subsequently indicted in state court for the narcotics crime, and he was ultimately convicted.  See http://nysdoccslookup.doccs.ny.gov/.

According to the Supplemental Report of Violations of Supervised Release, see Baez, No. 09-cr-74, ECF No. 142, plaintiff was sentenced for the narcotics conviction in Queens County Supreme Court on February 16, 2017.  After he was sentenced, the report states that plaintiff became enraged and tried to attack the state prosecutor in the courtroom.  According to the court officers (whose account of the incident is relayed in the report) plaintiff threw paperwork, was shouting expletives, tried to overturn the defense table, and "stepped toward the local state prosecutor," at which point the court officers tried to restrain him.  A physical altercation ensued.  The officers sustained serious injuries, including one officer who was hospitalized overnight.  Plaintiff was arrested for second degree assault (with intent to cause serious physical injury), a class D felony, and for obstruction of governmental administration in the second degree, a class A misdemeanor.

In his complaint in this action, however, plaintiff alleges that, while he was explaining to the state court why he was innocent of the charges for which he was being sentenced, he merely "touched the table."  At that point, he alleges, court officers James Aroujo, Thomas Caprioda, and Wilfredo Ramos threw him on the ground and put their knees on his back, cutting off his ability to breathe.  Officer Aroujo grabbed plaintiff's arm, purportedly trying to break it, after which the officers handcuffed plaintiff.  Plaintiff alleges that more court officers arrived and

even though plaintiff was lying flat on the ground in handcuffs not resisting, the three officers kept their knees on his back, stopping his breathing, and causing plaintiff to defecate on himself.

Plaintiff alleges that he was picked up and thrown around, brought to a separate area in the courthouse, and that during the transfer, the officers (plaintiff alleges a total of 11 were involved) "tried to ram [his] head in corner of elevator." Plaintiff could not walk because his pants were down and he was covered in feces. According to plaintiff, the court officers were continually assaulting him, "made [him] bang [his] head in cell gates," grabbed his face and neck and shoved his head on the ground, and finally picked him up and threw him in a courthouse cell.

Plaintiff further alleges that a female captain, identified in the complaint as Captain Jane Doe, then told court officials to charge defendant with assault and to cover up what had transpired by filing false reports.

Plaintiff was sent to the hospital, where he received an MRI. Plaintiff also saw medical personnel when he was taken back to Rikers Island. He alleges that the Rikers Island medical personnel failed to treat his injuries or schedule him for surgery, despite the results of the MRI which showed the extent of the injuries that he sustained from this incident. Instead, plaintiff alleges that the medical personnel allowed him to be transferred to federal detention, where he still has not received proper treatment.

As alluded to above, plaintiff ultimately pled guilty to attempted assault in the second degree, a class E felony. Plaintiff asserts in the instant complaint that he only pled guilty because he was under duress.

Plaintiff claims that he sustained permanent physical injuries, including a torn right bicep, broken left hand, a "torn" left ring finger, that he is "permanently bent," and that he continues to experience back pain. Plaintiff also claims that he was falsely charged with assault in the second

degree. He states that he did not commit an assault and any purported video surveillance that suggests he did was fabricated by defendants. Plaintiff requests that the court officers be fired and that the Court declare that defendants violated plaintiff's Eighth and Fourteenth Amendment rights. He seeks $2 million in damages.

## DISCUSSION

Under 28 U.S.C. § 1915A, the Court must screen a civil complaint filed by a prisoner seeking redress from a governmental entity, officer, or employee. In its review, the Court must identify cognizable claims or dismiss all or part of the complaint if the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the Court must construe *pro se* pleadings liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), and interpret them "to raise the strongest arguments that they suggest," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal citation omitted), a *pro se* complaint must still include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the Court must accept as true all the allegations contained in the complaint, that tenet "is inapplicable to legal

conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'" Harrison v. New York, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)).

### I. False Arrest

"The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992) (internal quotation marks and citations omitted). "Under New York law, the elements of a false [arrest] claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (alterations in original) (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)).

Although plaintiff "need not show that the prior proceedings against him terminated in his favor" on a false arrest claim, defendants are "entitled to prevail if [they] can establish that there was probable cause for the arrest, and a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).

5

Plaintiff claims that he was falsely arrested for assault in the second degree following his February 2017 sentencing. He pled guilty, however, to attempted assault in the second degree, relating to that very incident. The state court entered a judgment of conviction. It does not matter whether this conviction was obtained by jury verdict or guilty plea; either constitutes an adverse adjudication on the merits. See Maietta v. Artuz, 84 F.3d 100, 103 (2d Cir. 1996) ("[The defendant's] guilty plea . . . precludes a challenge to the validity of the arrest because the conviction following the guilty plea constitutes an adverse adjudication of the merits . . . .").

Nor is plaintiff's attempt to recant his guilty plea in the instant case of any effect. Id. at 103 (a §1983 plaintiff's "reasons for tendering that plea do not diminish the preclusive effect of the resulting conviction."). If plaintiff believes his guilty plea was involuntary, he needs to go to state court and have it vacated. Unless and until he does, his guilty plea is just as binding here as it is in state court. See Heck v. Humphrey, 512 U.S. 477, 486 n. 4 (1994) ("civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments"; this principle "applies to § 1983 damages actions").

As a result, plaintiff's claim for false arrest for that assault must be dismissed. See Cameron, 806 F.2d at 387 (citing Broughton, 37 N.Y.2d 451 at 373) (a plaintiff "can under no circumstances recover if he was convicted of the offense for which he was arrested"). By pleading guilty to attempted assault, plaintiff effectively conceded that there was probable cause to arrest him for that assault. See Chillemi v. Town of Southampton, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013).[1]

---

[1] To the extent plaintiff's complaint can be construed to raise a claim for malicious prosecution for the assault charge, that claim is also dismissed in light of plaintiff's guilty plea for attempted assault. See Cameron, 806 F.2d at 387 (noting that "the common-law rule [is] equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution").

The "Captain Jane Doe" defendant is dismissed from this lawsuit, as her only involvement in the complaint related to plaintiff's false arrest claim.

## II. Excessive Force

"In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, plaintiff[] must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests.'" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (alterations in original) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). This is a fact-specific inquiry, and whether the officers used reasonable force is determined in light of the totality of the circumstances presented in each case. See id.

For pleading purposes at the § 1915A review stage, plaintiff's excessive force claim seems not entirely incompatible with his guilty plea. Although plaintiff cannot deny in this case that he attempted to assault the court officers, that does not prohibit him from claiming that even after the attempted assault, the amount of force used by the court officers was unreasonable under the Fourth Amendment. See Shapard v. Attea, 710 F. App'x 15, 18 (2d Cir. 2017). It may be that a jury is disinclined to find excessive force or award him any damages since his guilty plea establishes that he started the fight. But that does not preclude his claim under § 1915A.

## III. Eighth Amendment Claim

Although plaintiff does not explicitly list it in his complaint, plaintiff's factual allegations arguably give rise to a § 1983 claim for a violation of his Eighth Amendment right to be free from cruel and unusual punishment. "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S.

825, 828 (1994). Deliberate indifference requires "a showing that the official was subjectively aware of [that] risk." Id.

Assuming that the facts alleged in the complaint are true and construing them in the light most favorable to plaintiff, plaintiff has sufficiently alleged for § 1915A purposes that Rikers Island medical personnel were aware that he sustained serious injuries as a result of this incident with the court officers and denied him necessary treatment, notwithstanding that awareness.

But plaintiff has only plausibly alleged the "direct or personal involvement" of the medical personnel who treated him immediately following this incident. See Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016). Those individuals reviewed the emergency room records and, according to the complaint, sent plaintiff away without necessary treatment. Thus, his claim may proceed only as to those medical personnel. Plaintiff has not plausibly alleged the direct or personal involvement by any other medical personnel, other than by making conclusory statements that he still has not received necessary treatment.

IV. **Monell** Claim

Lastly, plaintiff claims that the City of New York is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). "To prevail on a claim for municipal liability under § 1983, a plaintiff must show that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Amnesty Am., 361 F.3d at 125 (quoting Monell, 436 U.S. at 690). The City cannot be held liable for the acts of its employees under a theory of *respondeat superior*. See Monell, 436 U.S. at 692.

Plaintiff has alleged that the City failed to train, supervise, screen, and discipline its court officers, and therefore, it should have known that they were prone to use unreasonable force.

First of all, it is not clear that the court officers even worked for the City of New York; as employees of the Queens County Supreme Court, they may be state employees, for which the City would have no liability. Even if they were City employees, however, plaintiff has not alleged any facts that would support a plausible as opposed to merely possible inference that an official policy or custom of the City violated his federally protected rights. As noted above, it is not enough to provide mere conclusory statements or unsupported legal conclusions. See Iqbal, 556 U.S. at 678.

## CONCLUSION

Plaintiff's complaint is dismissed with respect to his false arrest and Monell claims. Plaintiff's § 1983 claims for excessive force and Eighth Amendment violations may proceed as described above as against the individual officers named in the complaint and the Rikers Island medical personnel once they are identified. The Clerk of Court is directed to issue summonses to officers Capriola, Ramos, and Araujo, and the United States Marshals Service is directed to serve the Amended Complaint and the summonses on those defendants. The Court refers this matter to Magistrate Judge Kuo for identification of the remaining defendants and for pretrial management.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
March 3, 2019